LARSON ET AL., APPELLANTS, *v.* PEPPARD, RESPONDENT.

(No. 2,582.)

(Submitted December 15, 1908.  Decided January 18, 1909.)

[99 Pac. 136.]

*Tax Deeds—Quieting Title—Equity—Condition Precedent to Maintaining Action—Interest—Form of Decree.*

Tax Deeds—Quieting Title—Suit in Equity.
1.  An action brought by a land owner under the provisions of section 6870, Revised Codes, to quiet the title to premises sold for delinquent taxes, is one in equity.

Same—Quieting Title—Condition Precedent to Maintaining Action.
2.  *Held,* that the maxim, "He who seeks equity must do equity," applies in an action by a land owner to quiet title to land sold for delinquent taxes, and that, as a condition precedent to maintaining his action, the plaintiff will be required to pay to the tax deed holder the amount of taxes which plaintiff should have paid, even conceding that, by reason of irregularities, the sale did not divest the owner of title, and no action could have been maintained by the purchaser to recover back the amounts paid by him, and although the rule of *caveat emptor* applies to the purchase at a delinquent tax sale.

Same—Quieting Title—Decree—Interest.
3.  The action by the land owner above referred to, not having been one to redeem from a tax sale, the court erred in allowing interest at the rate of two per cent per month from the time the delinquent taxes were paid by defendant.  Interest at the legal rate only was recoverable.

Same—Quieting Title—Form of Decree.
4.  The court decreed that the plaintiff land owner's title to land, sold for delinquent taxes, be quieted, subject to a lien in favor of defendant for the amounts paid by him.  The better practice in a case of this kind *held* to be, for the court to enter an order requiring plaintiff to make payment to defendant of the sums paid by the latter, with interest, within a reasonable time, the decree quieting title to be made upon payment, otherwise relief of any kind whatever to be denied plaintiff.

*Appeal from District Court, Missoula County; F. C. Webster, Judge.*

SUIT by Margaret Larson, executrix, and others against O. E. Peppard.  From a decree granting partial relief, plaintiffs appeal.  Reversed and remanded.

*Messrs. H. G. & S. H. McIntire,* for Appellants.

The provisions of the statutes concerning assessments and sales for delinquent taxes, especially where the same are in peremp-

tory language, are mandatory, must be strictly construed, and must be at least substantially complied with. Failing in this, the title of the owner of the property sold cannot be divested nor encumbered. (*Birney* v. *Warren,* 28 Mont. 68, 72 Pac. 293; Cooley on Taxation, 2d ed., pp. 266-274; *People* v. *Central P. R. Co.,* 83 Cal. 393, 23 Pac. 303; *Lake County* v. *Sulphur Bank etc. Co.,* 66 Cal. 20, 4 Pac. 876; *Gomer* v. *Chaffee,* 6 Colo. 314; *Cache Co.* v. *Jensen,* 21 Utah, 207, 61 Pac. 306; *Weyse* v. *Crawford,* 85 Cal. 196, 24 Pac. 736; *Shipman* v. *Forbes,* 97 Cal. 572, 32 Pac. 599.)

Where the statute prescribes the contents of a tax deed, a failure to observe the same is fatal to its validity. (*Anderson* v. *Hancock,* 64 Cal. 455, 2 Pac. 31; *Grimm* v. *O'Connell,* 54 Cal. 522; *Hubbell* v. *Campbell,* 56 Cal. 527; *Hughes* v. *Cannedy,* 92 Cal. 382, 28 Pac. 573.) It is elementary law that no man can be made a debtor for money paid by another unless it was paid at his request. (*Donovan-McCormick Co.* v. *Sparr,* 34 Mont. 243, 85 Pac. 1029; *Flournoy* v. *Flournoy,* 86 Cal. 294, 21 Am. St. Rep. 39, 24 Pac. 1012.) Voluntary payments of taxes are like other voluntary payments, and are not recoverable. (*Greenwood* v. *Adams,* 80 Cal. 74, 21 Pac. 1134; *Dranga* v. *Rowe,* 127 Cal. 510, 59 Pac. 944; *Harper* v. *Rowe,* 53 Cal. 238; *Dowell* v. *City of Portland,* 13 Or. 252, 10 Pac. 308; *McCormick* v. *Edwards,* 69 Tex. 109, 6 S. W. 32; Cooley on Taxation, 2d ed., p. 546; *Rowe* v. *Current River L. & C. Co.,* 99 Mo. App. 158, 73 S. W. 362; *Curtis* v. *Parks,* 55 Cal. 106; *Flournoy* v. *Flournoy,* 86 Cal. 294, 21 Am. St. Rep. 39, 24 Pac. 1012; *Huddleston* v. *Washington,* 136 Cal. 519, 69 Pac. 146; *Hamer* v. *Weber Co.,* 11 Utah, 1, 37 Pac. 746; *Paine* v. *Germantown T. Co.,* 136 Fed. 533, 69 C. C. A. 303; *Sheets* v. *Paine,* 10 N. D. 103, 86 N. W. 117; *Am. Ins. Co.* v. *County of Beadle,* 5 S. D. 415, 59 N. W. 212; *Mitchell* v. *Minnequa Town Co.,* 41 Colo. 367, 92 Pac. 678; *Homestead Co.* v. *Valley R. R.,* 17 Wall. 153, 21 L. Ed. 622.) That a lien on the land could not be decreed, and that the voluntary payment of taxes by one, a remainderman, cannot be recovered from the life tenant, see *Huddleston* v. *Washington,* 136 Cal.

519, 69 Pac. 146; *Curtis* v. *Parks, supra; Moulton* v. *Loux,* 52 Cal. 81; *McGee* v. *City San Jose,* 68 Cal. 91, 8 Pac. 641. *Assumpsit* will not lie by a husband to recover taxes paid on his wife's land, in the absence of a request by her, or of a promise of repayment. (*Doughty* v. *Miller,* 50 N. J. Eq. 529, 25 Atl. 153.)

*Messrs. Woody & Woody,* for Respondent.

Construing sections 83 and 121 of Session Laws, 1891, together, it necessarily follows that any lien which the state may have had on the real estate involved in this controversy, for taxes for the year 1893, passed to and became vested in the purchaser at the tax sale. (*Green* v. *McGrew,* 35 Ind. App. 104, 111 Am. St. Rep. 149, 72 N. E. 1049, 73 N. E. 832; *Comstock Ferre & Co.* v. *Devlin,* 99 Minn. 68, 108 N. W. 888; *Merriam.* v. *Hemple,* 17 Neb. 345, 22 N. W. 775; *Weston* v. *Meyers,* 45 Neb. 95, 63 N. W. 117; *Wagner* v. *Underhill,* 71 Kan. 637, 81 Pac. 177; *Gregory* v. *Bartlett,* 55 Ark. 30, 17 S. W. 344; *Parks* v. *Watson,* 20 Fed. 764.) A purchaser at a judicial sale, void on account of any irregularity in the notice of sale, manner or place of sale, is subrogated to the rights of the judgment creditor, and is entitled to be reimbursed by the owner of the property on account of the price paid by him at the sale, and also on account of all amounts paid for taxes subsequent to the sale. (17 Am. & Eng. Ency. of Law, p. 1024; 6 Current Law, p. 267, and authorities cited; Freeman on Executions, 2d ed., sec. 352, and authorities cited.) The purchaser of a tax title acquires all the rights and remedies of the tax deed holder. (*Comstock Ferre & Co.* v. *Devlin,* 99 Minn. 68, 108 N. W. 888; *Wheeler Co.* v. *Pates,* 43 Wash. 247, 86 Pac. 625; *Alexander* v. *Goodwin,* 20 Neb. 216, 29 N. W. 468.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This action was commenced in the district court of Missoula county by Peter Larson against O. E. Peppard for the purpose

of having determined any adverse claim of the defendant to certain pieces and parcels of land situated in the city of Missoula, and claimed to be owned by, and in the possession of, plaintiff and the heirs at law of one John Woods, deceased. The plaintiff died, and the personal representatives of his estate were substituted as plaintiffs. The complaint is in the ordinary form of actions to quiet title. The prayer is that the defendant be required to set forth the nature of his claim, that it be determined to be without right, and that the defendant be enjoined from asserting any claim to the premises. In addition to other defenses, the answer sets forth that in 1893 the premises in controversy were owned by Larson and Woods, and were assessed by the assessor of Missoula county for taxation to such owners; that the taxes were not paid within the time allowed by law before they became delinquent; that the property was advertised for sale for delinquent taxes; that a sale thereof was had, and at such sale Frank D. Low became the purchaser of the property and received the treasurer's certificate of sale; that in March, 1896, the county treasurer of Missoula county executed and delivered to Low a treasurer's deed for the property; that in 1896 Low and his wife executed and delivered to the defendant a quitclaim deed to the property; that from 1894 to 1901 the property was assessed to Low, and from 1902 to 1906 to this defendant; that all the taxes levied upon the property for 1894 and 1895 were paid by Low, and the taxes for 1897 to 1906 were paid by the defendant. The answer prays that, if it be found that the title to the property still remains in Larson and Woods, the defendant be adjudged to have a lien upon the property for the amounts paid by himself and his predecessor. The cause was tried to the court sitting without a jury. A decree was rendered and entered quieting plaintiff's title to an undivided one-half interest in the property, subject to a lien of defendant upon the whole property for the different amounts paid for taxes. From this judgment the plaintiffs have appealed.

It may be conceded that the proceedings taken in connection with the taxes for 1893 were so far irregular that the sale of the property by the county treasurer did not operate to divest Larson and Woods of their title to the property; and it may be conceded, further, for the purposes of this case, that, by reason of such irregularities, neither Low nor Peppard could maintain an action at law to recover back the amounts paid by him. But this is an action prosecuted under the provisions of section 6870, Revised Codes, and this court has repeatedly held that such an action is one in equity. (*Montana Ore Pur. Co.* v. *Boston & Montana Con. C. & S. Min. Co.,* 27 Mont. 288, 70 Pac. 1115; *Mares* v. *Dillon,* 30 Mont. 117, 75 Pac. 963; *North Real Estate L. & T. Co.* v. *Billings L. & T. Co.,* 36 Mont. 356, 93 Pac. 40.) Larson, then, having appealed to a court of equity to relieve his property from the outstanding claim of the defendant, the court could properly apply to him the maxim, "He who seeks equity must do equity." The property was subject to taxation. There was at least an attempt made to levy and collect the taxes. Larson and Woods owed the duty to bear their just proportion of the burden of state, county, and city governments. They failed to discharge the duty in this instance, and Peppard and his predecessor discharged it for them, under the mistaken belief that they thereby acquired an interest in the property. The payments made were not voluntary, in the sense that they were made merely to discharge the obligations of Larson and Woods. But in a case of this character the particular inquiry which the court makes is to ascertain whether the property was in fact subject to taxation; whether the proceedings were so far in compliance with the law that the court can say that the land owners should have paid the taxes, and that such taxes were their just contributions toward the support of government. If these facts appear, then equity will compel the tardy land owners to do that which they should have done in the first instance—pay the taxes. It is certainly not imposing upon them any unreasonable or unjust burden to require them to bear their just proportion of the expense of government. No reason is

suggested why these particular parties should be relieved from the payment of any taxes whatever upon this property for sixteen or seventeen years. When Larson applied to the district court, sitting as a court of equity, to quiet the title to his property as against any claim of the defendant, and it appeared that the defendant's claim rested upon the payment of taxes under the circumstances of this case, the court in effect said to him: "You and your co-owner ought to have paid the taxes on this property, and, as a condition precedent to your having such property free from any claim made by the defendant by reason of his having paid the taxes which you ought to have paid, you must now discharge your duty, as nearly as can be done, by paying the amounts to this defendant, together with legal interest thereon."

The authorities are not entirely in harmony upon this subject. Some of the courts deny the right to impose any condition whatever; but the rule adopted by the trial court, and which is approved in principle, has the support of many courts and text-writers, and, in our opinion, is right and ought to prevail in this state.

The assessment and sale of property for delinquent taxes is a proceeding *in invitum.* The purchaser at such sale buys at his peril, and the rule of *caveat emptor* applies (*Birney* v. *Warren,* 28 Mont. 64, 72 Pac. 293); but the mere fact that the rule of *caveat emptor* applies is not any ground for relieving the land owners from the payment of burdens for which the land was in fact responsible, without first requiring such land owners to do that which they ought to have done. "The owner comes into a court of equity, asking that he be relieved from tax proceedings which he claims to be illegal. Before his prayer should be granted, he should do equity himself, and reimburse the tax purchaser." (*Powers* v. *First National Bank,* 15 N. D. 466, 109 N. W. 361.)

In a very large number of jurisdictions it has been held that in a suit to quiet title or to determine adverse claims to real estate, instituted by the owner against the tax deed holder, the

rule, "He who seeks equity must do equity," applies with full force and vigor, and that the payment or tender of the taxes which the owner ought to have paid will be held to be a condition precedent to his right to the relief demanded. In *Boeck v. Merriam,* 10 Neb. 199, 4 N. W. 962, the supreme court of Nebraska states the rule in the terse and vigorous language of Chief Justice Maxwell, as follows: "But can the party claiming to be the owner of the land be permitted to have a tax deed declared void upon the ground that it is a cloud upon his title, unless he states some ground for equitable relief other than a mere irregularity in the assessment? The burdens of taxation must be borne by the taxable property in the state, and a fair proportion of such taxation is to be assessed upon all such property according to its value, and is in justice and equity a just charge against the same. When a taxpayer, therefore, for any cause escapes taxation, an act of injustice is committed against every other taxpayer in the state, as this additional burden is thrown upon them. * * * And if the owner of real estate can wait until his land has been sold for taxes and until the certificate of sale has ripened into a deed, and then upon a mere technicality, without the payment or offer to pay the taxes justly chargeable against his property, have delivered up and canceled at the costs of the tax purchaser, as in this case, the tax deed, he not only entirely escapes the payment of legitimate taxes, but the owner of the tax deed is deprived of a valuable legal right—that of trial by jury—and is mulcted in costs for his temerity in purchasing at tax sale, while the party claiming to be the owner of the land takes no hazard of losing his land from an adverse title. But such is not the law. He who seeks to have a tax deed declared void where the taxes for which the land was sold were lawful taxes, and justly chargeable against the same, if legally assessed, must, as a condition of relief, pay or offer to pay the taxes justly due thereon. Otherwise he states no ground for equitable relief. He does not offer to do equity. He seeks the aid of the court to aid him, by giving effect to mere technicalities, to shield him from his just liabilities. It

is difficult to imagine a case more utterly barren of equity than this."

Early in the history of North Dakota the rule for which appellants here contend was recognized. In a case of this character the delinquent land owner was permitted to have the title to his property quieted without the payment of back taxes (see *Douglas* v. *Fargo,* 13 N. D. 467, 101 N. W. 919); but in *State Finance Co.* v. *Beck,* 15 N. D. 374, 109 N. W. 357, the former decisions were overruled, and, among other things, the court said: "If the sale is set aside unconditionally, even though the tax is not canceled, the county is chargeable with the accrued interest, and plaintiff gets the benefit of the use of the money without interest, which he ought to have paid years before, and his tax-paying neighbors must suffer for his laches. A court of equity will not tolerate such injustice. It will grant relief only on the condition that the party seeking it does equity. The burden of each taxpayer's neglect of his obligations should be borne by himself. Hence we shall hold that, as a condition to the vacation of the sale in question, the plaintiff must pay to the defendant Beck, or into court for him, the amount for which the land was sold, with interest thereon at seven per cent per annum from the day of sale.  *  *  *  We do not question the well-established rule that a tax title purchaser buys at his peril. The doctrine of *caveat emptor* applies to such a sale to its full extent. However circumscribed the rights of the tax title purchaser may be as compared with those of the land owner, the latter is not entitled to more than his legal rights. The infirmities of the tax title do not absolve the taxpayer from his obligation to do equity when he seeks equity. We agree that the tax title purchaser is entitled only to his pound of flesh in whatever form he demands it. But confining the tax title purchaser to his strict legal rights is one thing, and relieving the tax debtor from his just share of taxes at the expense of his neighbors is quite another. This case is a fair illustration of the injustice resulting from adhering to the rule, heretofore in force in this state, of not requiring payment of just taxes as a condition pre-

cedent to relief in this class of cases. The owner of the land in this case has not paid a cent of tax on this property for more than twenty years. It is not claimed that any of the taxes were excessive or unfair, or that they otherwise infringed any of the land owner's constitutional rights. The technical requirements of the law as to the procedure have not been followed with precision; and the land owner not only asks to have the tax sales set aside, but declines to pay or offer to pay a cent of the taxes which are confessedly just. Under the rule heretofore in force, he was sustained in that position. * * * By overturning the precedents on this question established by former decisions, we do not in any way disturb the rules by which the validity of past or future tax sales are to be tested. We disturb no rights which are justly entitled to protection. It surely cannot be claimed that those who have neglected to pay their just taxes are in any position to invoke the doctrine of *stare decisis* to continued immunity from their obligation to do equity when they seek equitable relief. We are satisfied that public policy necessitates this modification of former decisions, and it is further justified by the fact that it restores in this state the rule recognized and applied in other jurisdictions. * * * Chapter 166, page 232, Laws of 1903, is an express legislative establishment of the rule we have been discussing. As indicated above, the court has inherent power, independent of such a statute, to do what the statute requires.''

In principle, the rule is stated and adopted by the following courts: *Wagner* v. *Underhill,* 71 Kan. 637, 81 Pac. 177; *Hole* v. *Van Duzer,* 11 Idaho, 79, 81 Pac. 109; *Hart* v. *Smith,* 44 Wis. 213; *Smith* v. *Gage,* 12 Fed. 32, 11 Biss. 217; *Fenton* v. *Minnesota etc. Co.,* 15 N. D. 365, 109 N. W. 363; *Phelps* v. *Harding,* 87 Ill. 442; *Denman* v. *Steinbach,* 29 Wash. 179, 69 Pac. 751; *Baldwin* v. *City of Elizabeth,* 42 N. J. Eq. 11, 6 Atl. 275. (See, also, 2 Desty on Taxation, 901, 982; Black on Tax Titles, sec. 442.) Many other authorities might be cited in support of this doctrine, but those given are deemed sufficient. In some of the states statutes have been enacted requiring the enforcement of

this rule, but the cases cited above were determined without reference to any statutory provision upon the subject.

The district court, however, erred in allowing interest at the rate of two per cent per month upon the payment made January 19, 1894. This is not a proceeding to redeem from a tax sale, and has not any of the characteristics of such a proceeding. The court should have allowed interest only at the legal rate. The form of the judgment or decree seems to have the approval of some of the authorities. We approve the action of the court in applying the maxim, "He who seeks equity must do equity," but in our judgment, the logical result from the application of that maxim would seem to be that the payment of the several amounts should be made a condition precedent to plaintiffs' right to the relief demanded. We think that the better practice would be in a case of this kind, for the trial court to enter an order requiring the plaintiffs to make such payment within a reasonable time, say thirty days. If the payment is made, then the decree quieting the title should be made and entered; but if the payment be not made within the time allowed, then the plaintiffs should be denied any relief whatever.

The cause will be remanded to the district court for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.