CITY OF MILWAUKEE, Plaintiff and Respondent, vs. CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY and another, Defendants and Appellants: COUNTY OF MILWAUKEE, Defendant and Respondent.

*October 14—November 10, 1936.*

74

*Ray T. McCann* of Milwaukee, for the appellant Lincoln Fireproof Warehouse Company.

For the appellant Chicago, Milwaukee, St. Paul & Pacific Railroad Company there was a brief by *Bender, Trump & McIntyre* of Milwaukee.

For the respondent city of Milwaukee there was a brief by *Walter J. Mattison,* city attorney, and *John J. Dolan,* assistant city attorney, and oral argument by *Mr. Dolan.*

For the respondent county of Milwaukee there was a brief by *Wm. A. Zabel,* district attorney, *O. L. O'Boyle,* corporation counsel, and *C. Stanley Perry,* assistant corporation counsel, and oral argument by *Mr. Perry.*

FAIRCHILD, J.   The state has set apart property, used in railroad and utility operation, to be assessed for certain taxation purposes by the state tax commission, leaving other property to be assessed by local authorities.   The tax com-

mission is required to make an annual assessment of the property of all railroad companies within this state for the purpose of levying and collecting taxes thereon. When there is included in this assessment and levy railroad property used in transferring freight or passengers between cars and vessels, then "for the purpose of accounting to the proper assessment districts, the commission shall make a separate valuation of each such dock, pier, wharf and grain elevator, including the approaches and appurtenances thereto." Secs. 76.01 to 76.16, Stats. The taxes paid by the railroad on such terminal facilities are to be "distributed to the towns, cities, and villages in which they are located." (Sec. 76.28 (4), Stats.) The local authorities will, of course, assess and collect taxes on property not necessarily used in operating the railroad.

The appellant railroad company owns land part of or adjacent to its right of way which has been leased to the appellant warehouse company. There was a controversy, beginning in 1922, over the nature of the use of the land and building thereon, and as to whether the business carried on by the warehouse company was such use and so connected with the operation of a railroad as to place the property for taxation in the class assessable by the tax commission. The question arising was whether the warehouse property was a terminal facility within sec. 76.16, Stats., or a business sufficiently independent thereof so that the predominant use was other than railroad operation. That part of the dispute, at least, was finally settled by decision of this court in the case of *Lincoln Fireproof Warehouse Co. v. Milwaukee*, 208 Wis. 70, 241 N. W. 623, 242 N. W. 558. The controversy as now presented under the pleadings is limited by that decision to the rights given and preserved to the respective parties by what occurred during the years in which the tax commission assessed the land and building as railroad property, and in which the local taxing authorities also treated it as property subject to local taxation. Because the appellants

agreed with the tax commission that it should make the assessment, they refused to pay the respondent city the tax locally assessed (there was no city or local assessment in the year 1924) during the years when the matter was in dispute. The respondent city sold the property under the delinquent tax statutes and the certificates here in foreclosure resulted.

In the second counterclaim against the city and cross complaint against the county, appellants' claim is that the property is unlawfully subjected to double taxation by the tax represented by the certificates; that if appellants are obliged to recognize the certificates as valid, they will be deprived of their property unlawfully and contrary to their rights guaranteed by the state and federal constitutions because they have already paid the tax levied by the tax commission under ch. 76, Stats. The proposition that the collection of the certificates is not enforceable because the property was erroneously assessed under that chapter (ch. 76, Stats.), and that erroneous tax paid, while the tax which should have been and was rightfully assessed and levied under ch. 70, Stats., was ignored, cannot be upheld. *Terminal Warehouse Co. v. Milwaukee,* 205 Wis. 607, 238 N. W. 513; *Lincoln Fireproof Warehouse Co. v. Milwaukee, supra.* The ultimate facts in this part of the answer show that the tax commission during certain years levied a tax; that that tax was improperly levied; that the appellants in good faith, but under a misapprehension of the application of the law to the true facts, paid into the state treasury the amount of that tax according to the provisions of ch. 76, Stats. It is alleged that during the years involved all the real estate owned by the railroad company which was necessarily used in the railroad business was assessed and taxes levied thereon by the tax commission, and that the land upon which the warehouse stands was included, that this tax was paid. There is no statement setting forth a claim by the appellants that any portion of the taxes paid were remitted to the city of Milwaukee, and the allegations found in the counterclaim and

cross complaint to the effect that the assessment and valuation of the property and the computation and levy of the taxes thereon under ch. 76, Stats., and the payment of said taxes by the railroad constitute payment in full of all and any taxes that may be lawfully assessed and levied against said real estate do not, by liberal construction, warrant an inference that a claim is being made that the respondents received and retained any amount that ought to apply on the payment of taxes which we now understand to have been properly assessable by the local taxing authority.

This is not a case where the appellants acknowledge the justice of the respondents' demand on the one hand, but on the other set up a demand of their own to counterbalance it either in whole or in part. If the pleading could be construed as setting forth a claim of payment or part payment of the local .taxes, received into possession of the city and county, it might be that the facts as pleaded then would be sufficiently stated to sustain the pleading, but the general tenor, in fact the apparent assertion, to be read out of the allegations is that power and duty in the local authorities do not exist and that the taxes levied by them under ch. 70, Stats., were void. The language employed in setting out the alleged counterclaim does not, and very evidently was not intended to, depart from the contention that because of the assessment under ch. 76, Stats., and the payment of that tax, no assessment under ch. 70, Stats., could be lawfully made. But the ruling on the proposition that the tax paid to the tax commission was a discharge of its tax obligation was against appellants in the *Lincoln Fireproof Warehouse Case, supra.* The lack of any showing that appellants have paid taxes locally assessed or anything entitling them to a credit thereon, because the city and county have had the benefit, leaves this counterclaim and cross complaint based solely on the general proposition which was decided adversely to appellants in the *Lincoln Fireproof Warehouse*

*Case.* It follows, therefore, that the demurrer to the second counterclaim and cross complaint was properly sustained.

The third counterclaim and cross complaint are based upon the theory that a course of conduct pursued by a party for the purpose of preventing unstifled bidding at a judicial sale invalidates the sale. The rule relied on does not apply to the situation here described. It is alleged that the city of Milwaukee commenced proceedings before the public service commission for the separation of grade at the intersection of the tracks of the railroad and Juneau avenue, a street in the city. The warehouse is a short distance away. The proceedings are still pending. The appellant warehouse company will sustain damages in a substantial amount if the change is made. It is charged that the assessment of the local tax is part of a plan to acquire the real estate and improvements and to pay less damages than would otherwise result.

Cases relied on by appellants do sustain the general proposition that a course of conduct maintained for the purpose of preventing unstifled bidding at a judicial sale invalidates the sale, but the conduct with which those cases deal is not the bringing of an action appropriate to secure legal rights in the property, as upheld in *Dickerman v. Northern Trust Co.* 176 U. S. 181, 20 Sup. Ct. 311, 44 L. Ed. 423, and as is the case here, but rather such direct influencing of possible bidders at a sale not to bid as statements or actions tending to mislead possible bidders, *Slater v. Maxwell,* 6 Wall. 268, 18 L. Ed. 796; *Frank & Darrow v. Arnold,* 73 Iowa, 370, 35 N. W. 453, at p. 456; *Koop v. Burris,* 95 Wis. 301, 70 N. W. 473; *Mutual Life Ins. Co. v. O'Donnell,* 146 N. Y. 275, 40 N. E. 787; *Wyandotte State Bank v. Murray,* 84 Kan. 524, 114 Pac. 847; or statements suggesting to possible bidders that they should not bid, *Federal Land Bank of New Orleans v. Green,* 11 La. App. 257, 123 So. 463, at p. 466; *Bickford v. Poor,* 68 N. H. 443, 44 Atl. 600; or

agreement among bidders not to bid competitively, *Youker v. Hobart*, 17 N. D. 296, 115 N. W. 839, at p. 840; *Pendleton v. Letzkus*, 91 W. Va. 612, 114 S. E. 246; *Singer Mfg. Co. v. Yerger* (C. C.), 12 Fed. 487; *Frank v. Arnold, supra.*

The general rule which applies to the staying of one action because another is pending is that the two actions must be such as to accomplish substantially the same result; that is, not only must the parties be the same, but the subject matter and the relief sought must be the same. 1 C. J. pp. 1162 to 1164.

When a lawful tax has been laid, it becomes the duty of the proper officials to collect it. There can be no objection to their proceeding to accomplish that collection in the usual and lawful manner. If the debt represented by the certificates is due, the proceedings calculated to bring the avails of the tax into the city and county treasury are not affected by an independent and distinct proceeding on the part of the city in the interest of the safety of the users of the highways. The court will not speculate as to the motives which the city may have. *Dickerman v. Northern Trust Co., supra.* The facts do not afford a reason equitably sufficient to interfere with the usual and orderly procedure now being resorted to by respondents to collect taxes long past due.

The demurrer to the fourth counterclaim and cross complaint raises the question as to whether any fatal defect exists in the assessment and levy because the taxes were not assessed and levied separately against property owned by the railroad company and that owned by the warehouse company. The pleading is based on the theory that the law requires the assessment of the real estate to one and the assessment of the improvements to the other of the appellants.

During the years in which the taxes we have to deal with in this matter were levied, the statutes defined "real property" as including not only the land itself, but all buildings and improvements thereon. Sec. 1035, Stats., had earlier provided that " 'real property' . . . shall include not only

the land itself, but all the buildings, . . . *appertaining* thereto." (Sec. 1035, Stats. 1915.) In the case of *State ex rel. Hansen S. Co. v. Bodden,* 166 Wis. 219, 164 N. W. 1009, decided in 1917, it was ruled that a building erected upon leased premises for a temporary purpose, the lessee having the right to remove the same at the end of the term, does not *appertain* to the land upon which it stands within the meaning of the section as then worded, and that the building should be assessed for taxation, not as real property, but as personal property. It was said in that case at page 222:

" 'Appertain' means to belong to, and in the sense in which it is used in this statute means to belong to the land upon which it stands so as to be a part of the land in a legal sense."

The legislature by ch. 244, Laws of 1919, changed the definition of real property from what it had been with relation to the assessment of taxes by eliminating so far as temporary buildings were concerned the requirement that it appertain to the land upon which it stands, within the meaning of sec. 1035, Stats., and made it read:

" 'Real property,' . . . when used in this title, shall include not only the land itself but all buildings, including buildings on leased land. . . ."

This compels the conclusion that the duty existed to assess the buildings on the land as real estate. *Aberg v. Moe,* 198 Wis. 349, 224 N. W. 132, 226 N. W. 301; *Langlade v. Crocker Chair Co.* 190 Wis. 226, 208 N. W. 799.

Sec. 70.17, Stats., during practically all the period and down to 1933, contained this provision:

"All buildings on lands under lease or permit, . . . shall be assessed as real estate to the owners of such buildings, if known, otherwise as above provided. . . ."

In 1926 the amendment of 1919 was the subject of consideration here in the case of *Langlade v. Crocker Chair Co.* 190 Wis. 226, 208 N. W. 799. A company had constructed

a private railroad using rails and track materials held by it under lease. Because of sec. 70.17, Stats., as then existing, it was decided that "the legislature intended thereafter that buildings and improvements on leased lands should be included as a part of the real estate for the purposes of taxation." The ruling in that case was an authoritative interpretation of the statute. No change has been made that affects the question now before us. The legislature after the decision in the *Langlade Case* did in 1933 amend sec. 70.17, Stats., so as to read: "Improvements on leased lands may be assessed either as real property or personal property." But as said in *Aberg v. Moe, supra,* with reference to the section controlling here:

"Under the provisions of these statutes, throughout the history of the state lands have been assessed to the owner. No doubt the legislature might empower the assessor to assess the leasehold interest against the lessees and so divide up the property for the purposes of taxation. That, however, has never been the policy of our law so far as we know except for a brief period when the state undertook to tax the respective interests of the mortgagor and mortgagee separately. The entire property, including all interests in it, is assessed to the owner of the property as defined in the statute, and the right of every person claiming any interest in the property subordinate to the fee, whether under lease, contract, or otherwise, is extinguished if the property be sold in the exercise of the taxing power."

The taxing authorities followed a method resulting in taxes which can be discharged only by payment. While the land is owned by the railroad and the building by the warehouse company, they were considered by the assessor as a single unit. There is no complaint of a failure to state separately in the line following the description of the tract of land and in separate columns, first, "the valuation of the land exclusive of improvements," and, second, "the improvements," and third, "the value of both lands and improvements." Sec. 70.32 (2), Stats. The purpose of providing procedural safeguards in the levying and collecting

of taxes is not to make it hard to assess and realize the proceeds, but to give reasonable protection to the taxpayer, in an opportunity to challenge valuations and to protect himself against losses resulting from surprises. The provision for assessment of the building in the name of the owner was to form a basis for proceedings, provided for in the statute, respecting collection of the taxes by suit on personal liability, but in this case the authorities are seeking to collect the tax out of the property.

We are of the opinion that the statutes and the provisions of the city charter have not been violated by the officials in the assessment made against appellants. *Langlade v. Crocker Chair Co., supra; La Paul v. Heywood,* 113 Minn. 376, 129 N. W. 763; *Aberg v. Moe, supra; Schmidt v. Almon,* 181 Wis. 244, 194 N. W. 168; *Gymnastic Association v. Milwaukee,* 129 Wis. 429, 109 N. W. 109.

Since the railroad company takes the same position on this appeal as the warehouse company, the foregoing discussion applies to the contentions of each.

*By the Court.*—Order affirmed, and cause remanded for further proceedings according to law.